UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


SHARYL MARDEN, Personal Representative
of the Estate of JACK BRIAN MARDEN,
deceased,

       Plaintiff,                            No.

   v                                        Hon.

COUNTY OF MIDLAND, a county governmental
entity; JEFFERY DEROCHER in his individual capacity;
BRIAN KEIDEL in his individual capacity;
RICHARD SPEICH in his individual capacity;
JOSHUA MICHAEL SAYLOR in his individual capacity;
RICH HARNOIS in his individual capacity;
and BRYAN KRYZANOWICZ in his individual capacity,

       Defendants, jointly and severally.
_____/

JULES B. OLSMAN (P28958)
RANDY J. WALLACE (P57556)
OLSMAN MACKENZIE & WALLACE, P.C.
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-2300
jbolsman@olsmanlaw.com
_____/

**<u>COMPLAINT</u>**

      NOW COMES the plaintiff, SHARYL MARDEN, Personal Representative of the Estate

of JACK BRIAN MARDEN, deceased, by and through her attorneys, OLSMAN MACKENZIE &

WALLACE, P.C., by JULES B. OLSMAN and RANDY J. WALLACE, and does hereby complain

against the defendants in a civil action, stating unto this Court as follows:

**JURISDICTION**

1.      This is a civil action brought pursuant to 42 USC §1981, *et seq.*, seeking monetary and punitive damages against the defendants, jointly and severally, pursuant to 42 USC §1983 as well as costs and attorney fees which are available pursuant to 42 USC §1988 for violation of the civil rights of plaintiff's decedent Jack Brian Marden under the Fourth, Eighth and Fourteenth Amendments of the Constitution of the United States and under common law of the State of Michigan against the above-named individual defendants, in their individual capacities, and the County of Midland.

2.      That the jurisdiction of this Court is founded upon 28 USC §1331, 1343(a)(3) and (4), 42 USC §1983, and upon the pendent jurisdiction of this Court to adjudicate claims arising under Michigan law.

3.      That the amount in controversy in the above-entitled matter exceeds Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest, costs and attorney fees.

**PARTIES**

4.      That the plaintiff Sharyl Marden is a citizen and resident of the City of Midland, County of Midland, State of Michigan.  She is the duly appointed Personal Representative of the Estate of her husband Jack Brian Marden, deceased, (hereinafter referred to as "Jack Marden"),who died on February 13, 2015 as a result of the conduct of the defendants herein who caused him to asphyxiate and suffer cardiac arrest and anoxic brain injury as a result of the use of extreme excessive force and the battering which Jack Marden, deceased, endured at the Midland County Jail on February 11, 2015.

5.      That the defendant County of Midland is a governmental entity organized and existing pursuant to the law of the State of Michigan.  It is the governmental body which governs Midland County and is responsible for the operation of the Midland County Sheriff's Department and the Midland County Jail.  For all times relevant hereto, the employees of the defendant Midland County who are named herein, in their respective individual capacities, were in the course and scope of their employment with Midland County Sheriff's Department, worked at the Midland County Jail, and were acting under color of state law.

6.      That the defendant Jeffery Derocher (hereinafter referred to as "Derocher"), is a citizen of the State of Michigan and, at all times relevant hereto, was employed as a Lieutenant for the Midland County Sheriff's Department, a department of the defendant County of Midland, a county governmental entity.

7.      That the defendant Brian Keidel (hereinafter referred to as "Keidel"), is a citizen of the State of Michigan and, at all times relevant hereto, was employed as a Deputy for the Midland County Sheriff's Department, a department of the defendant County of Midland, a county governmental entity.

8.      That the defendant Richard Speich (hereinafter referred to as "Speich"), is a citizen of the State of Michigan and, at all times relevant hereto, was employed as a Deputy for the Midland County Sheriff's Department, a department of the defendant County of Midland, a county governmental entity.

9.      That the defendant  Joshua Michael Saylor (hereinafter referred to as "Saylor"), is a citizen of the State of Michigan and, at all times relevant hereto, was employed as a Deputy for the Midland County Sheriff's Department, a department of the

defendant County of Midland, a county governmental entity.

10.     That the defendant  Rich Harnois (hereinafter referred to as "Harnois"), is a citizen of the State of Michigan and, at all times relevant hereto, was employed as a Captain for the Midland County Sheriff's Department, a department of the defendant County of Midland, a county governmental entity.

11.     That the defendant Bryan Kryzanowicz (hereinafter referred to as "Kryzanowicz"), is a citizen of the State of Michigan and, at all times relevant hereto, was employed as a Deputy for the Midland County Sheriff's Department, a department of the defendant County of Midland, a county governmental entity.

12.     That at the time of the occurrences and events alleged in this Complaint, the defendant Derocher was, at all times relevant hereto, acting in his individual capacity and within the course and scope of his employment as a Lieutenant employed by the defendant County of Midland and under color of law.

13.     That at the time of the occurrences and events alleged in this Complaint, the defendant Keidel was, at all times relevant hereto, acting in his individual capacity and within the course and scope of his employment as a Deputy employed by the defendant County of Midland and under color of law.

14.     That at the time of the occurrences and events alleged in this Complaint, the defendant Speich was, at all times relevant hereto, acting in his individual capacity and within the course and scope of his employment as a Deputy employed by the defendant County of Midland and under color of law.

15.     That at the time of the occurrences and events alleged in this Complaint, the defendant Saylor was, at all times relevant hereto, acting in his individual capacity and

within the course and scope of his employment as a Deputy employed by the defendant County of Midland and under color of law.

16.     That at the time of the occurrences and events alleged in this Complaint, the defendant Harnois was, at all times relevant hereto, acting in his individual capacity and within the course and scope of his employment as a Captain employed by the defendant County of Midland and under color of law. He was employed as the Jail Administrator at the Midland County Jail.

17.     That at the time of the occurrences and events alleged in this Complaint, the defendant Kryzanowicz was, at all times relevant hereto, acting in his individual capacity and within the course and scope of his employment as a Deputy employed by the defendant County of Midland and under color of law.

18.     That the defendants are jointly and severally liable in this matter.

19.     That the defendant Midland County is vicariously liable for the conduct of the individual defendants Derocher, Keidel, Speich, Saylor, Harnois and Kryzanowicz pursuant to the doctrine of *respondeat superior* as all of the defendants were continuously acting in the course and scope of their employment as deputies and officers of the Midland County Sheriff's Department.

**STATEMENT OF FACTS**

20.     That the above-entitled matter arises out of the wrongful death of plaintiff's decedent Jack Marden on February 13, 2015 following his asphyxiation and the cardiac arrest he suffered in the Midland County Jail on February 11, 2015 which was proximately caused by the conduct of the defendants Derocher, Keidel, Speich, Saylor and Kryzanowicz

who used extreme excessive force as they attempted to allegedly subdue and extract

plaintiff's decedent Jack Marden from his cell at the Midland County Jail.  The incident was

supervised by defendant Harnois.

21.     That plaintiff's decedent Jack Marden was 56 years of age at the time of his

death (DOB: 01/29/1959).  He was taken into custody by Midland City Police officers on

January 19, 2015 following an episode at his home.  Jack Marden claimed to have taken an

overdose of the drug Valium, was walking in his house with a knife and asked the

responding officers to shoot him.  A Midland City Police officer deployed a taser gun on and

used it to subdue plaintiff's decedent Jack Marden.  Midland City Police officers arranged

for him to be transported to the MidMichigan Medical Center for psychiatric evaluation

without difficulty.

22.     That the incident at the Marden home apparently arose out of a domestic

dispute between Jack and Sharyl Marden that was verbal in nature.

23.     That at the time of this occurrence involved herein, plaintiff's decedent Jack

Marden had no history of violent behavior but had previously been diagnosed with

depression.

24.     That on January 19, 2015, Jack Marden was transported to the MidMichigan

Medical Center via EMS.  The call for the ambulance indicated that the run involved an

alleged "overdose/poisoning."  It was also noted that he had an injury to his arm in the

form of a laceration.

25.     That Jack Marden was observed at MidMichigan Medical Center overnight.

Thereafter, he was discharged home.  He was not arrested or detained by any law

enforcement agency.  No holds were issued to prevent his release from the hospital.

26.     That at the time of his discharge from MidMichigan Medical Center, Jack Marden was pleasant, cooperative and at all times appropriate with health care personnel.  The discharging physician noted that he was suffering from major depression. He denied feeling helpless or suicidal.  He advised the discharging physician that "he just wants to get cleaned up and get home again and hopefully patch things up with his wife." His affect was noted to be pleasant.  He was well mannered.  He was noted to be "quite serious about everything."  He indicated he was agreeable to continued care, counseling and he further agreed to counseling care and referral to out-patient services for therapy for himself and his wife.

27.     That the discharging psychiatrist further stated, "I do not believe that he presents an imminent danger to himself or others."

28.     That Jack Marden remained at home with his wife Sharyl Marden without incident from January 20, 2015 until the date of his arrest, February 4, 2015, pursuant to a felony warrant issued as a result of the incident at their home which had occurred sixteen (16) days earlier.

29.     That plaintiff's decedent Jack Marden was arrested by the Midland City Police Department and taken to the Midland County Sheriff's Department on February 4, 2015. He was held in the intake area of the jail from February 4 until February 11 on charges of assault and aggravated assault based on a warrant issued long after the January 19, 2015 incident at his home.

30.     That upon his admission to the Midland County Jail on February 4, 2015, defendant's employees obtained a medical history from plaintiff's decedent which included the fact that he previously had cardiac stents implanted as a result of coronary artery

disease and that he had also suffered a cerebral aneurysm four years previous to the date of his incarceration.  Defendants further knew or should have known that his treating psychiatrist specifically opined that he represented no threat to himself or to others at the time of his discharge on January 19, 2015.

31.    That on February 5, 2015, plaintiff's decedent Jack Marden underwent a psychiatric evaluation in the Midland County Jail at which time he was noted to be suffering from depression with anxiety and major depressive disorder.

32.    That plaintiff's decedent Jack Marden remained at the Midland County Jail as a pretrial detainee in the intake area of the jail from February 4, 2015 up through February 11, 2015.

33.    That on or about February 11, 2015 at approximately 11:15 a.m., plaintiff's decedent Jack Marden was removed from his cell in order to be interviewed by Gina Latty and Marissa Bolton, representatives of Community Mental Health.

34.    That four minutes later at 11:19 a.m., Marissa Boulton stepped out of the interview room and advised defendant Derocher that Jack Marden was becoming agitated and requested that he be returned to his cell.

35.    That while returning Jack Marden to his cell, defendants Saylor and Derocher noted that Jack Marden made statements to the effect that people were trying to hurt him. He stated that the French government was confiscating his money.

36.    That defendants Speich, Saylor and Derocher allege that they then attempted to get Jack Marden to voluntarily reenter his cell and that while attempting to place him into a "escort position," Marden displayed "superhuman strength."  Jack Marden was 5'11" and weighed 205 lbs.

-8-

37.     That according to defendants' reports, defendants Speich, Kryzanowicz and Saylor lifted Jack Marden and placed him in his cell.  Jack Marden continued to yell "help, help, help" and "emergency, emergency, emergency" on the radio that he had removed from defendant Derocher's belt.

38.     That upon information and belief, Community Mental Health supervisor Gina Latty was making arrangements for Jack Marden to be transported to the MidMichigan Medical Center mental health unit for evaluation.  According to the report created by defendant Derocher, it was decided that if Jack Marden resisted, he would be a threat to himself and others and safe transport would be impossible.  As a result, a plan was "formulated" regarding the best tactic to handle the situation.

39.     That Jack Marden was observed in his cell.  He removed his jumpsuit.  He apparently used the bathroom and was wiping soiled toilet paper on his shoulders and back.

40.     That defendant Harnois then ordered members of the CERT team (Corrections Emergency Response Team) activate and get dressed in protective equipment. Protective gear is required so as to protect the law enforcement officer from injury which, in turn, prevents the officer from unnecessarily inflicting injury upon the individual who the CERT team was attempting to subdue.

41.     That according to the incident report created by the defendants, Jack Marden was then left alone in his cell by the defendants.  Before the CERT team and defendant Derocher entered the cell, it was noted that he appeared to be recovering from the struggle and exhibiting signs of minor fatigue.  It was noted that Jack Marden had rolled onto his back.

42.     That at approximately 12:02 p.m., defendants Speich, Keidel, Kryzanowicz, Saylor and Derocher went into Jack Marden's cell at which point he threw a blanket and jumpsuit at the staff.

43.     That defendant Derocher entered the cell with the members of the CERT team.  He was not wearing protective gear, in direct violation of the policies and procedures of the Midland County Jail.

44.     That members of the CERT team restrained Jack Marden in an upright position in the corner of his cell near the phone and the toilet.  He was forced to the ground coming to rest under the sink with his feet near the toilet and his head near the privacy wall of the cell.

45.     That members of the CERT team sought to control the movement of Jack Marden's extremities.  Defendant Derocher alleges he sought to attempt to control Jack Marden's head.

46.     That plaintiff's decedent was able to secure the radio hanging on defendant Derocher's belt and began shouting for help.

47.     That at 12:02 p.m. on February 11, 2015, defendants Speich, Kryzanowicz, Keidel, Saylor and Derocher entered plaintiff's decedent's cell.  Plaintiff's decedent was "taken to the ground."  Defendants contend that plaintiff's decedent extended his neck in an attempt to resist control.  Defendants placed their hands on plaintiff's decedent's jaw and forehead.  Pressure point control tactics were applied to plaintiff's decedent's jaw by defendant Derocher.

48.     That pursuant to the report created by the defendant Derocher, Derocher was "kneeling" over the head of plaintiff's decedent which allowed decedent's left arm to

extend between defendant Derocher's legs.

49.     That pursuant to the report issued by the defendant Derocher, plaintiff's decedent reached up and held defendant Derocher's testicles.  Defendant Derocher then violently struck and punched Jack Marden in the head repeatedly until Derocher claims he was able to "reposition his left shin" so that it was resting on top of the decedent's arm.

50.     That defendant Derocher contends that Jack Marden, who was struggling to breathe, began to manipulate his mouth as if he intended to spit at him.  At no point did plaintiff's decedent spit on the defendant.  Defendant Derocher ordered a "spit hood" which defendant Saylor placed over Jack Marden's face.

51.     That plaintiff's decedent Jack Marden repeatedly complained that he was having difficulty breathing.  Jack Marden stated, "I can't breath" several times.  Defendants proceeded to place and/or allow to be placed the spit mask on his head.

52.     That defendant Derocher violently and repeatedly pummeled Jack Marden about the head and restricting his breathing further with the spit mask.

53.     That Jack Marden's breathing became agonal in nature.

54.     That a nurse was then summoned to evaluate Jack Marden.

55.     That plaintiff's decedent was then moved to a restraint chair.

56.     That Jack Marden continued to complain of difficulty breathing.  He pleaded that the spit hood be removed so he could breathe.

57.     That Jack Marden lost consciousness.

58.     That plaintiff's decedent Jack Marden was removed to the MidMichigan Medical Center by ambulance.  That upon arrival at the MidMichigan Medical Center, he was in acute cardiac pulmonary arrest.

-11-

59.     That plaintiff's decedent Jack Marden died on February 13, 2015 at 2:30 p.m. as a result of acute respiratory failure due to a severe anoxic brain injury secondary to cardiac arrest which was proximately caused by the needless, unnecessary and violent assault on Jack Marden by defendant members of the CERT team and defendant Derocher in the Midland County Jail on February 11, 2015.

60.     That Sharyl Marden, as Personal Representative of the Estate of Jack Marden, deceased, seeks all appropriate and allowable relief and remedies resulting from the constitutional violations defendants deliberately and willfully inflicted upon plaintiff's decedent Jack Marden while he was held at the Midland County Jail on February 11, 2015.

61.     That in addition thereto, plaintiff Sharyl Marden seeks such damages as she is entitled to under the Michigan Wrongful Death Act, MCLA 600.2922; together with costs and attorney fees along with such other relief as this Court shall deem necessary and proper.

## COUNT I
## Constitutional Violations by All Defendants

1.     That plaintiff repeats and realleges Paragraphs 1 through 61, inclusive, as if set forth more specifically paragraph by paragraph.

2.     That defendants, acting under color of law, violated plaintiff's decedent's constitutionally protected rights, including his right to be free from the use of excessive force, and to be free from cruel and unusual punishment, pursuant to the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution, by the following conduct:

    (a)     Defendant Derocher repeatedly beat and  pummeled plaintiff's
            decedent's head, holding him down with his knees and applying
            pressure point pain to his jaw while not wearing appropriate CERT

-12-

gear, causing plaintiff's decedent to asphyxiate and suffer cardiac arrest, which was objectively unreasonable and constituted the use of excessive force, and which constituted cruel and unusual punishment as the conduct reflected the unnecessary and wanton infliction of pain.

(b)     Defendant Harnois as the officer in charge had complete supervisory authority over defendants Keidel, Speich, Saylor, Kryzanowicz and Derocher. He had both the opportunity and the authority to stop the entire intervention of the CERT team and the improperly attired and equipped Derocher when he was able to observe that the intrusion into Jack Marden's cell was becoming needlessly violent and uncontrolled.

(c)     Defendant Derocher entered the cell with a CERT team without proper CERT gear, exposing plaintiff's decedent to the unreasonable risk of physical harm, battery and ultimately death.

(d)     Defendant Derocher attempted to restrain plaintiff's decedent despite the fact there were three other deputies in the cell in proper CERT attire to subdue Jack Marden.

(e)     Defendant Derocher further placed a spit mask on the face of plaintiff's decedent thereby constricting his ability to breathe despite observing and hearing Jack Marden state that he was having difficulty breathing and despite the fact that plaintiff's decedent at no time spit at any individual in his cell, causing plaintiff's decedent to asphyxiate and suffer cardiac arrest, which was objectively unreasonable, constituted the use of excessive force, and constituted cruel and unusual punishment as the conduct reflected the unnecessary and wanton infliction of pain.

(f)     Defendant Derocher's conduct, as outlined above, was not applied in a good-faith effort to maintain or restore discipline; rather it was applied maliciously and sadistically to cause harm, and the pain inflicted was sufficiently serious to constitute excessive force and cruel and unusual punishment.

(g)     Defendants Derocher, Keidel, Speich, Saylor, Kryzanowicz and Harnois directly participated in the above-referenced conduct and they owed plaintiff's decedent a duty of protection.

(h)     Defendants Keidel, Speich, Saylor, Kryzanowicz and Harnois observed and had reason to know that excessive force would be and/or was being used against Jack Marden and had both the opportunity and the means to prevent the harm from occurring to Jack Marden, but failed

-13-

to do so.

(i)     Despite their duties to the contrary, Defendants Keidel, Speich, Saylor, Kryzanowicz and Harnois deliberately, maliciously, wrongfully and recklessly disregarded the ramifications of Derocher's actions by employing unlawful, unnecessary and excessive force to plaintiff's decedent on February 11, 2015.

(j)     The actions of Defendants Derocher, Keidel, Speich, Saylor, Kryzanowicz and Harnois, as outlined above, were objectively unreasonable, constituted the use of excessive force, and constituted cruel and unusual punishment as the conduct reflected the unnecessary and wanton infliction of pain.

(k)     Defendant Harnois supervised the conduct of Defendant Derocher, as well as Defendants Keidel, Speich, Saylor and Kryzanowicz, and had both the opportunity and the means to prevent the harm from occurring to Jack Marden, but failed to do so.

(l)     Defendants Derocher, Keidel, Speich, Saylor, Kryzanowicz and Harnois were deliberately indifferent toward plaintiff's decedent Jack Marden and his well being including his serious medical conditions, including coronary artery disease, myocardial infarction, and inability to breathe caused by the unnecessary, improper and unwarranted use of a spit mask by defendant Derocher;

(m)     The actions of Defendants Derocher, Keidel, Speich, Saylor, Kryzanowicz and Harnois complained of herein constitute the deprivation of protected liberty, right to due process, right to personal safety and bodily integrity as well as protection from unreasonable seizure, and were committed without any legitimate goal or penological justification.

(n)     When Jack Marden advised Defendants Derocher, Keidel, Speich, Saylor, Kryzanowicz and Harnois that he could not breathe, the defendants were willfully and deliberately indifferent to his serious underlying cardiac condition and inability to breathe, and placing a spit mask over the face of Jack Marden further inhibited, interfered and made it more difficult for him to breathe despite having repeatedly advised defendants that he could not do so, resulting in asphyxiation, cardiac arrest, resulting in an anoxic brain injury, and death on February 13, 2015.

(o)     Defendant County of Midland, acting under color of state law, authorized, tolerated, ratified and permitted and/or acquiesced in the creation of policies, practices and customs including inadequate

-14-

training especially when making decisions on the use of force toward individuals incarcerated in the Midland County Jail, and thereby demonstrated willful and deliberate indifference to the constitutional rights of its citizens, which was the moving force behind the constitutional violations referenced in this complaint.

3.    That the constitutional rights which were violated by defendants, as set forth above, were clearly established before February 11, 2015.

4.    That the actions of the defendants, as set forth above, were objectively unreasonable.

5.    That as a direct and proximate result of the defendants' willful and deliberate violations of Jack Marden's constitutionally protected rights, as outlined above, plaintiff Sharyl Marden as the Personal Representative of the Estate of Jack Marden, deceased, sustained the following damages:

(a)    Extreme physical pain and suffering;

(b)    Wrongful death;

(c)    Severe mental and emotional distress on the part of plaintiff's decedent Jack Marden;

(d)    Mortification and humiliation;

(e)    Embarrassment and denial of social pleasures;

(f)    Medical expenses related to his cardiac arrest and other injuries inflicted by the defendants;

(g)    Exemplary damages;

(h)    Punitive damages available under federal law;

(i)    Costs, interest and attorney fees;

(j)    Attorney fees which may be awarded pursuant to 42 USC §1983;

(k)    All damages allowed by Michigan Wrongful Death Act, MCL 600.2922 which include funeral and burial expense, medical expenses, damages

-15-

for conscious pain and suffering and damages for loss of love, society and companionship suffered by those persons deemed interested persons;

(l)     Such other damages as are permitted by law.

6.     That the defendants are jointly and severally liable for plaintiff's damages.

WHEREFORE, plaintiff Sharyl Marden, Personal Representative of the Estate of Jack Marden, deceased, prays for such compensatory damages as are available pursuant to the law of the State of Michigan and federal law.  Plaintiff Sharyl Marden further seeks punitive damages available pursuant to 42 USC §1983 as to the individual defendants Derocher, Keidel, Speich, Saylor, Kryzanowicz and Harnois, jointly and severally, together with prejudgment interest, costs and attorney fees in an amount to be determined by the Court; wherefore, she brings this suit.

**COUNT II**
**State Law Claim for Assault and Battery**
**as to Defendants Derocher, Keidel, Speich, Saylor and Kryzanowicz**

1.     Plaintiff repeats and realleges Paragraphs 1 through 61, inclusive, as if set forth more specifically paragraph by paragraph.

2.     That at the time the defendants entered the cell of plaintiff's decedent, he was clearly in the throes of a psychiatric episode.  He was not armed.  He had no access to weapons of any kind.  He posed no threat of any kind to the defendants who knew or should have known that there was no reason for the exercise of violent police behavior toward plaintiff's decedent Jack Marden.

3.     That Defendants engaged in conduct which constitutes assault and battery as to plaintiff's decedent Jack Marden including repeatedly pummeling him in the head as he struggled to breathe and was continuously restrained by the defendants.  Said conduct

-16-

constituted an assault as it included the intentional unlawful offer of corporal injury to Jack Marden by force, and/or force unlawfully directed toward Jack Marden, under circumstances which created a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact.  Said conduct likewise constituted a battery as it included the willful and harmful and/or offensive touching of Jack Marden resulting from an act intended to cause such a contact.

4.      That as a direct and proximate result of the assault and battery committed by defendants, plaintiff Sharyl Marden, as Personal Representative for the Estate of Jack Brian Marden, deceased, suffered damages provided for by the Michigan Wrongful Death Act including conscious pain and suffering sustained by plaintiff's decedent Jack Marden, loss of society and companionship on the part of those persons deemed interested persons, funeral and burial expense as well as expenses related to medical care and treatment provided to plaintiff's decedent prior to his death.

5.      That plaintiff's damages exceed Seventy-Five Thousand ($75,000.00) Dollars.

WHEREFORE, plaintiff Sharyl Marden, Personal Representative of the Estate of Jack Marden, deceased, prays for such compensatory damages as are available pursuant to the common-law of the State of Michigan, in excess of the Seventy-Five Thousand ($75,000.00) Dollars jurisdictional limit of this Court.

OLSMAN MACKENZIE & WALLACE, P.C.

By /s/ Jules B. Olsman_____
   Jules B. Olsman (P28958)
   Randy J. Wallace (P57556)
   Attorneys for Plaintiff
   2684 West Eleven Mile Road
   Berkley, MI 48072
   (248) 591-2300

Dated:  December 31, 2015

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


SHARYL MARDEN, Personal Representative
of the Estate of JACK BRIAN MARDEN,
deceased,

     Plaintiff,                           No.

  v                                Hon.

COUNTY OF MIDLAND, a county governmental
entity; JEFFERY DEROCHER in his individual capacity;
BRIAN KEIDEL in his individual capacity;
RICHARD SPEICH in his individual capacity;
JOSHUA MICHAEL SAYLOR in his individual capacity;
RICH HARNOIS in his individual capacity;
and BRYAN KRYZANOWICZ in his individual capacity,

     Defendants, jointly and severally.
_____/

JULES B. OLSMAN (P28958)
RANDY J. WALLACE (P57556)
OLSMAN MACKENZIE & WALLACE, P.C.
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-2300
jbolsman@olsmanlaw.com
_____/

**<u>JURY DEMAND</u>**

     NOW COMES the plaintiff, SHARYL MARDEN, Personal Representative of the Estate

of JACK BRIAN MARDEN, deceased, by and through her attorneys, OLSMAN MACKENZIE &

WALLACE, P.C., by JULES B. OLSMAN and RANDY J. WALLACE, and hereby demands a trial

by jury of the above-entitled cause.

OLSMAN MACKENZIE & WALLACE, P.C.


By /s/ Jules B. Olsman
   Jules B. Olsman (P28958)
   Randy J. Wallace (P57556)
   Attorneys for Plaintiff
   2684 West Eleven Mile Road
   Berkley, MI 48072
   (248) 591-2300

Dated:  December 31, 2015