UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHARYL MARDEN,

        Plaintiff,

v.

        Case No. 15-cv-14504
        Honorable Thomas L. Ludington

COUNTY OF MIDLAND, et al.,

        Defendants.
_____/

**ORDER DENYING MOTION TO FILE THIRD PARTY COMPLAINT**
**AND EXTENDING SCHEDULING ORDER**

On December 31, 2015 Plaintiff Sharyl Marden initiated this action by filing her complaint against Defendants Midland County, Jeffrey Derocher, Brian Keidel, Richard Speich, Joshua Michael Saylor, Richard Harnois, and Bryan Kryzanowicz. *See* Compl., ECF No. 1. Based on allegations that her decedent Jack Brian Marden died in the custody of Defendant Midland on February 13, 2015 as a result of the actions of Defendants, Plaintiff asserts violations of Decedent's rights under the Fourth, Eight, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. *Id.* She also asserts a claim of state law assault and battery against Defendants Derocher, Keidel, Speich, Saylor, and Kryzanowicz (together the "Officer Defendants"). *Id*.

On July 29, 2016 Defendants filed a motion for permission to file a third party complaint against People to People Network, Inc. ("PTPN") and Richard Bratton, D.O., for indemnification. ECF No. 19. Defendants allege that PTPN and Dr. Bratton had an agreement with Midland County to provide medical and nursing care services to jail inmates, including Decedent Marden. *Id*. Defendants further allege that the Proposed Defendants' failure to provide those services may have caused the damages alleged by Plaintiff in her complaint. *Id*. Plaintiff filed a response objecting to the filing of a third-party complaint, but asserting that the

Proposed Defendants' conduct may have cause Jack Marden's erratic behavior. *See* ECF No. 21 ¶ 3 ("defendants and/or the third-party defendants failed to provide plaintiff's decedent with medications that he was taking on a regular sustained basis. Sudden withdrawal from Valium may, in fact, have contributed to the episode of nonviolent delusional behavior which led the Midland County Sheriff deputies to enter his cell and brutally assault him."). ECF No. 21.

A motion hearing was held on September 26, 2016. At the hearing the Court ruled that Defendant's motion to file a third-party complaint and all related third-party issues would be held in abeyance pending the depositions of Dr. Bratton and PTPN employees and representatives. Those depositions have now taken place, the Court has received supplemental briefs, and a telephonic status conference took place on November 1, 2016. Based on the parties' briefs, the hearing, and the supplemental information, Defendant's motion will be denied.

**I.**

Plaintiff Sharyl Marden is a resident of Midland County, Michigan. Compl. ¶ 4. She is the duly appointed personal representative of the estate of her husband, Decedent Jack Brian Marden. *Id*. Decedent Marden, born on January 29, 1959, had no history of violence but had been diagnosed with depression. Compl. ¶¶ 21, 23. He was 5'11" and weighed 205 pounds. Comp. ¶ 36.

Defendant County of Midland is a governmental entity organized and existing under the laws of the State of Michigan. Compl. ¶ 5. Midland County is responsible for operating the Midland County Sheriff's Department and the Midland County Jail. *Id.* At all relevant times Defendant Harnois was employed by Midland County as Captain for the Midland County Sheriff's Department and Jail Administrator for the Midland County Jail. Compl. ¶¶ 10, 16.

Defendant Derocher was employed as a lieutenant, and all other Officer Defendants were employed as deputies. Compl. ¶¶ 6-9, 11-15. Plaintiff alleges that the individual Defendants were acting in their individual capacities within the course and scope of their employment at the time of the relevant events. Compl. ¶¶ 11-16.

**A.**

The chain of events leading to Decedent Marden's death began on January 19, 2015. After Decedent Marden allegedly took an overdose of the drug Valium, a domestic dispute arose between Plaintiff and Decedent. Compl. ¶¶ 21-22. Midland County police officers were summoned to the scene, after which Decedent walked around his home with a knife and asked the responding officers to shoot him. Compl. ¶ 21. A police officer deployed a Tazer to subdue Decedent, and he was transported by ambulance to MidMichigan Medical Center for a psychiatric evaluation without incident. *Id*. In the call for the ambulance, it was represented that Decedent had an injury to his arm in the form of a laceration and was the subject of "overdose/poisoning." Compl. ¶ 24.

After being observed at MidMichigan Medical Center overnight, Decedent was discharged. Compl. ¶ 25. The discharging physician noted that Marden was suffering from major depression, but that he denied feeling helpless or suicidal. Compl. ¶ 26. At the time, decedent was agreeable to continuing care and counseling, and agreed to referral to out-patient services for therapy for himself and Plaintiff, his wife. Compl. ¶ 26. The discharging physician opined that Decedent did not present an imminent danger to himself or others. Compl. ¶ 27.

Decedent Marden returned home following his discharge, where he remained until February 4, 2015. Compl. ¶ 28. On that date, the Midland City Police Department executed a felony arrest warrant charging Decedent with assault and aggravated assault issued as a result of

the domestic incident that took place on January 19, 2015. Compl. ¶¶ 28-29. Decedent was taken to the Midland County jail. Compl. ¶ 29. Upon his arrival, employees of Midland County obtained Decedent's medical history, which included information regarding cardiac stents that had been implanted as a result of Decedent's coronary artery disease and that Decedent had suffered a cerebral aneurysm four years earlier. Compl. ¶ 30.

On February 5, 2015 Decedent Marden underwent a psychiatric evaluation based on which it was determined that Decedent as suffering from depression with anxiety and major depressive disorder. Comp. ¶ 31.

**B.**

Decedent was held in the intake area of the jail as a pretrial detainee until February 11, 2015. Comp. ¶ 32. On that date, at around 11:19 AM he was removed from his cell for an interview with Gina Latty and Marissa Boulton, representative of Community Mental Health. Comp. ¶ 33. Four minutes later, Ms. Boulton left the room to advise Deputy Derocher that Decedent was becoming agitated and requested that he be returned to his cell. Comp. ¶ 34. While Deputies Derocher and Saylor attempted to return Decedent to his cell, Decedent represented that people were trying to hurt him and the French government was confiscating his money. Comp. ¶ 35. When Deputies Derocher, Saylor and Speich attempted to place Decedent in his cell, Decedent allegedly displayed "superhuman strength." Comp. ¶ 36. He stole a radio from from Deputy Derocher's belt and began yelling "help, help, help" and "emergency, emergency, emergency" into the radio as Deputies Speich, Kryzanowicz, and Saylor lifted him and placed him in his cell. Comp. ¶ 37. After being placed in his cell, Decedent was observed removing his jumpsuit, relieving himself, and was wiping soiled toilet paper on his shoulders and back. *Id*. at 39.

As a result of this incident, Community Mental Health supervisor Gina Latty began making arrangements for Decedent to be transported to the MidMichigan Medical Center for an evaluation. Compl. ¶ 38. Deputy Derocher determined that if Decedent resisted the transportation he would be a threat to himself and others. *Id*. The jail employees therefore began formulating a plan to transport Decedent in a way that would minimize the risk of incident. *Id*. Captain Harnois ultimately ordered members of the Corrections Emergency Response Team ("CERT") to don protective equipment designed to protect law enforcement officers from injuries and prevent officers from inflicting unnecessary injuries upon the individual being subdued. *Id.* at ¶ 40. Deputy Derocher allegedly did not don any protective gear. *Id*. at ¶ 43. At this time, Decedent was apparently recovering from the struggle and exhibiting signs of minor fatigue, assuming a position lying on his back. *Id*. at ¶ 41.

At approximately 12:02 p.m. the Officer Defendants entered Decedent's cell. Compl. ¶ 42. Decedent responded by throwing his blanket and jumpsuit at the officers. *Id*. The Officer Defendants, including Deputy Derocher, restrained Decedent in an upright position in the corner of his cell near the phone and toilet, and forced him to the ground under the sink, with his feet near the toilet and his head near the cell's privacy wall. *Id*. at ¶ 44. The Officer Defendants then sought to restrain Decedent's extremities, with Derocher attempting to control his head by "kneeling" over Decedent's head and using pressure control tactics on his jaw. *Id*. at ¶¶ 45, 47, 48. At this time Decedent again seized Derocher's radio and began shouting for help. *Id*. at ¶ 46. Decedent also allegedly reached between Derocher's legs and grabbed his testicles. *Id*. at ¶ 49. In response Derocher struck and punched Decedent in the head repeatedly until he was able to place his shin on top of Decedent's arm. *Id*. Deputy Derocher reported that Decedent then began manipulating his mouth as if to spit on him. *Id*. at ¶ 50. Pursuant to Deputy Derocher's orders

Deputy Saylor placed a "spit hood" over Decedent's face. *Id*. Plaintiff alleges that even before the Spit Hood was placed over his face Decedent was struggling to breathe. *Id*. at ¶¶ 50, 51.

After the spit hood was placed over his face Decedent breathing became more labored. *Id*. at ¶ 53. A nurse was summoned to evaluate Decedent, and he was moved to a restraint chair. *Id*. at ¶¶ 54-55. Decedent eventually lost consciousness, and was taken to the MidMichigan Medical Center by ambulance. *Id*. at ¶¶ 57-58. At that time it was determined that Decedent was in acute cardiac pulmonary arrest. *Id*. at ¶ 58. Decedent died two days later, on February 13, 2015 at 2:30 p.m., as a result of acute respiratory failure due to severe anoxic brain injury secondary to cardiac arrest. *Id*. at ¶ 59. Plaintiff alleges that the death was proximately caused by "the needless, unnecessary, and violent assault on Jack Marden…." *Id*. Plaintiff Sharyl Marden, as personal representative of Decedent's estate, responded by filing the present action against Defendants on December 31, 2015.

## II.

Defendants seek leave to file a third-party complaint against PTPN and Dr. Bratton. Defendants allege they have recently discovered that the Proposed Defendants may have been negligent in providing nursing and medical services to Decedent by depriving him of his medication. As a result, Defendants allege, the proposed defendants are contractually obligated to indemnify them for the injuries caused to Decedent.

Under Federal Rule of Civil Procedure 14(a)(1), "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Such a claim may be filed by a defendant against a non-party. *See* Fed. R. Civ. P. 14(a)(5). "The purpose of Rule 14 is to permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final

determination of the rights and liabilities of all the interested parties in one suit." *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). "Third-party pleading is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded. *Id*.

Where, as here, a defendant seeks to file a third-party complaint more than fourteen days after filing its original answer, it must first obtain the Court's permission. Fed. R. Civ. P. 14(a)(1). Whether to grant leave for a third-party complaint is within the discretion of the trial court, and the timeliness of the request is "an urgent factor governing the exercise of such discretion." *Gen. Elec. Co. v. Irvin*, 274 F.2d 175, 178 (6th Cir. 1960). "[T]imely motions for leave to implead third parties should be freely granted [...]unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim." *Trane U.S. Inc. v. Meehan*, 250 F.R.D. 319, 322 (N.D. Ohio 2008) (quoting *Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 240 (S.D.N.Y. 2004)).

Defendant's motion will be denied based on the content of Plaintiff's complaint. The § 1983 claim and the assault and battery claim asserted in Plaintiff's complaint focus solely on the existing Defendants' alleged misuse of force in responding to Jack Marden's behavior on February 11, 2015. *See* Compl. pp. 12-16. The complaint does not refer to the Proposed Defendants or seek to assign them fault for "… the needless, unnecessary and violent assault on Jack Marden by Defendant members of the CERT team and defendant Derocher in the Midland County Jail on February 11, 2015." *See* Compl. ¶ 59. Thus the conduct of the healthcare providers prior to February 11, 2015 is irrelevant to the claims of excessive force, cruel and unusual punishment, and assault and battery as pled by Plaintiff.

### III.

Accordingly, it is **ORDERED** that Defendant's motion for leave to file a third party complaint, ECF No. 19, is **DENIED**.

It is further **ORDERED** that the scheduling order is **EXTENDED** as follows:

| | |
|---|---|
| Motions Challenging Experts: | **January 3, 2017** |
| Dispositive Motions Due: | **January 19, 2017** |
| Motions *in limine* Due: | **April 4, 2017** |
| Final Pretrial Order & Instructions: | **April 25, 2017** |
| Final Pretrial Conference: | **May 2, 2017 at 3:00 pm** |
| Trial Date: | **May 16, 2017 at 8:30 am** |

                                                      s/Thomas L. Ludington
                                                      THOMAS L. LUDINGTON
                                                      United States District Judge

Dated: November 4, 2016

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 4, 2016.

                                      s/Michael A. Sian
                                      MICHAEL A. SIAN, Case Manager